## SWAN et al. v. PRICE.

(Court of Civil Appeals of Texas. Galveston. Dec. 11, 1913. On Motion for Rehearing, Jan. 8, 1914.)

1. APPEAL AND ERROR (§ 80*)—FINAL JUDGMENT—WHAT CONSTITUTES.

All of the issues properly presented by the pleadings will be presumed to have been disposed of by the judgment, unless it appears otherwise on its face, and a judgment will be considered as finally disposing of defendants' counterclaim, where it granted relief in favor of plaintiff, even though the counterclaim was not mentioned, and hence an appeal may be taken from such judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 429, 432, 433, 450, 456, 457, 494–509; Dec. Dig. § 80.*]

2. WITNESSES (§ 160*) — COMPETENCY — DECEASED PERSONS.

Under Sayles' Ann. Civ. St. 1897, art. 2302, providing that, in actions by or against executors, the survivor shall not be allowed to testify as to any transaction with or statement by decedent, a plaintiff seeking to charge the estate of a decedent with a constructive trust cannot testify that the decedent received the proceeds from the sale of plaintiff's farm, and that none of them were paid over to plaintiff; for the statute applies as well to transactions between a deceased and a third party, where plaintiff claims the benefit of such transactions, as it does to transactions between plaintiff and the deceased.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 696, 697; Dec. Dig. § 160.*]

3. APPEAL AND ERROR (§ 1054*)—REVIEW—HARMLESS ERROR.

In an action where plaintiff sought to charge the estate of a decedent with a constructive trust, and the only testimony showing the receipt by decedent of plaintiff's money was plaintiff's testimony, the evidence cannot be held harmless to defendants, who were unsuc-

cessful below, though the cause was tried to the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4185, 4186; Dec. Dig. § 1054.*]

4. NEW TRIAL (§ 164*)—AMENDMENT.

The trial court cannot amend or reform a judgment on motion for new trial so as to make it conform to new facts then presented; its only right being to grant a new trial in case the newly discovered evidence is such that there would probably be a different result on the second trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 333; Dec. Dig. § 164.*]

On Motion for Rehearing.

5. WITNESSES (§ 159*)—COMPETENCY—TRANSACTIONS WITH DECEASED PERSONS.

In an action where it was sought to charge the estate of a deceased person with a constructive trust, plaintiff cannot testify that decedent never paid over to her certain moneys which he collected as her agent, Sayles' Ann. Civ. St. 1897, § 2302, applying to this negative as well as to positive testimony of the decedent's acts or declarations.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 629, 664, 666–669, 671–682; Dec. Dig. § 159.*]

6. APPEAL AND ERROR (§ 1054*)—REVIEW—HARMLESS ERROR.

Where a cause is tried to the court without a jury, error in the admission of evidence will not be considered prejudicial, where there is other evidence to support the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4185, 4186; Dec. Dig. § 1054.*]

7. TRUSTS (§ 110*)—PRESUMPTION.

There is a presumption that an agent duly authorized to collect money for his principal has done his duty and delivered the money, and hence a judgment, charging the agent's estate with a constructive trust on the theory that he had converted the money, cannot be sustained in the absence of evidence to that effect.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 160; Dec. Dig. § 110.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Emma E. Price against Guy G. Swan and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Charles Murphy and Roy F. Campbell, both of Houston, for appellants. W. H. Schweikert and L. C. Kemp, both of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant Guy G. Swan individually and as executor of the estate of Milton J. Swan, deceased, and against Mrs. Swan, the wife of said Guy G. Swan, Charles E. Swan, Katherine Mary Frazier and her husband, Rex D. Frazier. The petition alleges, in substance, that plaintiff and defendants are the owners in fee simple of a tract of 426⅔ acres of land in Waller county, which is fully described in the petition, plaintiff being the owner of an undivided onehalf of said land, the defendants Guy G. Swan and wife an undivided one-fourth, and the defendants Guy G. Swan, Charles E. Swan, and Katherine Mary Frazier, heirs of Milton J. Swan, the remaining one-fourth, but that the interest of the defendants in said land is subject to a resulting trust in favor of plaintiff. It is then alleged that on various dates between March 1, 1904, and March 1, 1908, the defendant Guy G. Swan and Milton J. Swan, as agents of plaintiff, received for her various sums of money, aggregating the sum of $10,527.22, and that they had failed and refused to account to plaintiff for the amount so received by them, except the sum of $3,250, which was expended by them for plaintiff in the purchase and improvement of her one-half of said land. It is further alleged that said defendant and Milton J. Swan, deceased, received various other sums of money as agent for plaintiff for which they had failed and refused to account, but "plaintiff is unable to state the exact amounts received by said defendants, or when received by them, but alleges the amount to be $2,500." It is then alleged that the money so collected by said parties as agents of plaintiff was expended by them in purchasing the land before described, but that, acting in defraud of plaintiff's rights, they took title to one-half thereof in their own names. The prayer of the petition is as follows: "Wherefore plaintiff prays that, in addition to the one-half interest in said land belonging to plaintiff by deed in her own name, the court declare a resulting trust in plaintiff's favor for the one-half interest standing in the names of Milton J. Swan and Guy G. Swan, and, in the event the court finds that plaintiff is entitled to only onehalf of said land, then this plaintiff prays for a partition thereof and that her part be set apart to her in severalty from the interest of said defendants, and plaintiff prays for an order of court compelling Guy G. Swan and Guy G. Swan, executor of the estate of Milton J. Swan, deceased, to file an account showing the amount of plaintiff's money received by them or either of them, when, where, and for what purpose expended, and that in the event a resulting trust be not declared in favor of plaintiff for one-half of said land that she have judgment against defendants Guy G. Swan and Guy G. Swan as executor of the estate of Milton J. Swan, deceased, for the sum of money found to be due plaintiff from defendants Guy G. Swan and Milton J. Swan, and, in case plaintiff is found to be entitled to only a part of said land, that commissioners be appointed, and that the interest of said plaintiff in said land be set apart in severalty from the interest of defendants, and that this plaintiff may have her writ of possession for that portion of the land awarded to her and for all costs of court and for such other and further relief as plaintiff may be entitled either general or special."

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Defendants answered by general demurrer and various special exceptions. They also denied generally the allegations of plaintiff's petition and in bar of plaintiff's claim for an accounting pleaded limitation of two and four years. It is then averred that plaintiff and the defendant Guy G. Swan and Milton J. Swan purchased the land described in plaintiff's petition, plaintiff acquiring title to an undivided one-half therein, and Guy G. Swan and the said Milton J. Swan each an undivided one-fourth, and that by the will of said Milton J. Swan, who died in 1911, the defendants Guy G. Swan, Charles E. Swan, and Katherine Mary Frazier became the equal owners of the one-fourth interest of the said Milton J. Swan. It is then averred that the money paid by the said Guy G. Swan and Milton J. Swan for said land was their own money, and no part of it was money received by them for plaintiff or belonging to her, and that defendants have at all times been and are now ready and willing to partition said land and they join in plaintiff's prayer for partition and pray that one-half of said land and improvements be set aside to them. Then follows special denials that the defendant Guy G. Swan or Milton J. Swan, deceased, was ever an agent of the plaintiff or ever received or collected money for her as alleged in the petition, save and except that the said Milton J. Swan did, at the request of plaintiff, discount certain notes belonging to her and applied the proceeds of said notes, $2,704.20, to payment of the purchase money of plaintiff's one-half interest in said land. It is then averred that, after the purchase of said land by plaintiff and said Guy G. and Milton J. Swan, it was agreed by and between said parties that they would improve and cultivate said land as partners, and would share in proportion to their interest in the land the costs and expenses of said improvements and cultivation and the profits, if any, arising therefrom, and that the said Swans had expended in the improvement and cultivation of said land the sum of $7,000 over and above any proceeds derived from crops raised on said land. The defendants Guy G. Swan and wife further alleged that said Guy G. Swan as manager, and his wife as cook, on said farm, rendered personal services for said partnership for four years of the reasonable value of $1,000 per year, for one-half of which amount plaintiff is liable. These last-named defendants further averred that the property involved is their homestead and their interest therein cannot be subjected to a lien for any debt that may be due by them. The answer concludes with the following prayer: "Wherefore defendants pray that on a hearing hereof and on the accounting here presented that they have judgment against the defendants for one-half of the difference in the amount advanced by them and that advanced by the plaintiff, and that for the services of Guy G. Swan and his wife on the farm, plaintiff to pay one-half, for a partition, for an accounting, and for such other and further relief as defendants may be entitled in law, of which they will ever pray." Defendants offered evidence on the trial tending to support their counterclaim.

The cause was tried in the court below without a jury, and judgment rendered in favor of plaintiff decreeing a partition of the land, giving one-half thereof to plaintiff, one-fourth to appellant Guy G. Swan, and the remaining one-fourth to the said Guy G. Swan, Katherine Mary Frazier, and Charles E. Swan in equal proportion, and directing that in making partition of the land plaintiff's one-half thereof shall include the house and barn which the court finds was paid for by money furnished by plaintiff, and, in event it be found that an equitable partition of the land cannot be made so as to place said improvements on the one-half set aside to plaintiff, it is ordered that the land be sold, and out of the proceeds of such sale that plaintiff be first paid the sum of $2,-471.98, the value of said improvements, and that the remainder of said proceeds be divided between the parties in proportion to their interest in the land, as before stated. "It is further ordered, adjudged, and decreed by the court that plaintiff, Mrs. Emma E. Price, do have and recover of and from the defendants Guy G. Swan and Guy G. Swan as executor of the estate of Milton J. Swan, deceased, the sum of four thousand two hundred and seven $22/100$ dollars ($4,-207.22) with interest thereon at the rate of 6 per cent. per annum from May 9, 1908, and it is further ordered, adjudged, and decreed by the court that the money judgment against Guy G. Swan, as executor of the estate of Milton J. Swan, deceased, be and the same is hereby decreed to be a judgment against defendants, Chas. E. Swan and Katherine Frazier and Rex D. Frazier, her husband, to the extent of their interest in or property received from the estate of Milton J. Swan, deceased." It was further ordered that plaintiff have her execution to enforce the money judgment above set out, but, as to the defendants Charles E. Swan and Frazier, such execution should only run against the property received by them from the estate of Milton J. Swan, deceased.

Defendants in due time filed a motion for new trial, one of the grounds of such motion being that since the trial they had discovered evidence which showed that Milton J. Swan had paid plaintiff a portion of the money for which the court had rendered judgment against the defendants. Upon the hearing of this motion, the court found that the facts therein stated as to the newly discovered evidence were true, and that according to such evidence defendants were entitled to a credit of $975. He further found that defendants were entitled to another credit of $1,525, which was not allowed on the trial because

not properly pleaded, but which he concluded should be allowed, notwithstanding the deficiency in the pleading. Upon these findings, he ordered and decreed that the original judgment be reformed so that plaintiff should only recover the sum of $1,707.22. He also eliminated the direction in the original judgment as to the sale of the land and partition of its proceeds, and directed that the land be divided by an east and west line so as to place the improvements upon the one-half set aside to plaintiff.

[1] At a former sitting of this court we dismissed this appeal on the ground that the judgment appealed from was not a final judgment. After further consideration and investigation of the authorities, we have decided that we erred in holding that the judgment is not final. In reaching our former conclusion, we conceived the law to be that, unless the judgment disposed of the counterclaim or pleas in reconvention by express terms, or by necessary implication, it was not a final judgment. If this is the rule, our former judgment was correct, because the judgment of the trial court does not expressly dispose of defendants' counterclaims and is one that could have been rendered without taking said counterclaims into consideration. This is manifestly true, as the plaintiff claimed an indebtedness against defendants of approximately $13,000, all of which was denied by the defendants, the counterclaims asserted by defendants aggregated $5,500, and the judgment rendered was in favor of plaintiff for $4,200. We think this case is different from one in which the plaintiff sues for specific amount, and the defendant interposes a counterclaim for a less or greater amount, and judgment is rendered in favor of plaintiff for the whole amount claimed by him. Such a judgment is by necessary implication a judgment against defendant's counterclaim. This is not true of the judgment in this case, because the judgment for plaintiff for $4,200 could have been based entirely on the failure of plaintiff to establish her claim for a larger amount, and defendants' counterclaims might not have been considered at all by the court in rendering such judgment.

A further investigation of the authorities, however, has led us to the conclusion that the rule now enforced in this state is that all the issues properly presented by the pleadings will be presumed to have been disposed of by the judgment, unless it appears otherwise from the face of the judgment. Under this rule, the judgment in this case must be held to be a final judgment, because, in rendering judgment in favor of plaintiff for $4,200, the court might have either rejected or allowed the counterclaim in whole or in part. Such being the case, it cannot be said that it appears from the judgment that the counterclaim was not passed on, and therefore it must be regarded as concluded by the judgment. Hermann v. Allen, 103 Tex. 382, 128

S. W. 115; Trammell v. Rosen (Sup.) 157 S. W. 1161. This conclusion requires that our former judgment dismissing the appeal be set aside, and it has been so ordered.

[2] Upon the trial the plaintiff testified in regard to the sale of land belonging to her by the deceased, Milton J. Swan, and his collection of the proceeds of such sale, as follows: "At the time this farm was sold, I was at the home of M. J. Swan; I was sick in bed at the time, I was not able to be out at all. M. J. Swan attended to all the business with reference to the sale of the farm. When my farm in Indiana was sold, I did not receive the cash consideration or any of the notes. I stated that at that time I was in Frankfort, Ind., at Mr. Swan's house sick, I did not have anything to do with the closing up that trade; M. J. Swan acted for me in the matter. There was none of the cash consideration turned over to me at that time— none of the notes were turned over to me at that time. The first time that I ever saw any of those notes or had them in my possession was when they were sent from Katy, Tex., to me; that was about the year 1910. M. J. Swan collected the fourth note, the note due in 1905. He was acting as my agent. M. J. Swan collected the notes due, respectively, March 1, 1905, March 1, 1906, March 1, 1907, March 1, 1908. M. J. Swan took charge of the three notes for $1,000 each becoming due in 1913, 1914, and 1915, and the note for $527 becoming due in 1916. Those notes were afterwards discounted by M. J. Swan. Guy G. Swan nor M. J. Swan never consulted me or asked my consent to discount those notes; I did not know that they were going to be discounted until after they were discounted."

Defendants objected to this testimony on the ground that it was testimony by plaintiff as to transactions with the deceased and was prohibited by article 2302, Sayles' Civil Statutes. This objection to the testimony should have been sustained. Plaintiff's suit being against the heirs and executor of the will of Milton J. Swan, deceased, by the express provisions of the statute above cited she could not testify as to transactions with or statements by the deceased, not having been called to so testify by the defendants. The statement that deceased represented her in the sale of the land and attended to all of the matters relating thereto and that he collected or discounted the notes given for said land is clearly a statement as to transactions with the deceased and was not admissible. The statute applies as well to transactions between the deceased and a third party, when the plaintiff is claiming the benefit of such transaction, as it does to transactions directly between the plaintiff and the deceased. Parks v. Caudle, 58 Tex. 216.

[3] This is the only definite testimony as to the collection of some of the money by the deceased which plaintiff seeks to recover in

this suit, and, in view of the uncertain character of the testimony as a whole as to the amount of plaintiff's money received by the deceased, we cannot hold that this illegal testimony was not considered by the court in rendering the judgment against the defendants.

[4] It goes without saying that the trial court was not authorized on the hearing for a new trial to base a judgment reforming and reducing the amount of the original judgment on the newly discovered evidence presented by defendants with their motion for new trial, and appellee's cross-assignment complaining of this would necessarily have to be sustained if it had not been withdrawn, or rather only insisted on in event this court should conclude that the original judgment should be reinstated and affirmed. This cannot be done, for the reason that, in addition to the error in the admission of testimony before pointed out, the trial court, in reforming the judgment, as he did, in effect held that the defendants were entitled to a new trial on the ground of newly discovered evidence, and we think that holding is sustained by the record.

Appellants have not assigned error on the action of the court in reforming the original judgment, and it may be that they could not be heard to complain of such error if it should appear from the record that the only error against them in the original judgment was in the amount, and such error was fully cured by the amended or reformed judgment rendered on the motion for a new trial, but there is no authority for amending or reforming a judgment on motion for new trial so as to make it conform to the new facts presented on the hearing of the motion. The proper practice in such case is to deny the motion if the newly discovered evidence is not probably true, or would not likely change the result upon another trial, or the party making the motion fails to show that he could not by proper diligence have presented the evidence on the trial, and to grant it if the newly discovered evidence is probably true and would likely change the result on another trial, and the party shows that he was not at fault in not presenting it on the trial.

We are of opinion that the judgment should be reversed and the cause remanded for a new trial, and it is so ordered.

Reversed and remanded.

### On Motion for Rehearing.

In addition to the testimony of plaintiff set out in the main opinion to which defendants' objections were, as held in that opinion, improperly overruled, the plaintiff testified: "I wrote to Guy Swan or Milton J. Swan asking them for an accounting of how much money was due me. Neither of them ever made an accounting to me of money they received of mine. I never received any money from either Guy G. Swan or Milton J. Swan

after this letter was written. Guy G. Swan and Milton J. Swan were in the grocery business in Frankfort, Ind., under the firm name of Swan & Son. After the Swans came to Texas, I did not authorize them to use my money in buying personal property to farm on said land. I was not a partner with Guy G. Swan or Milton J. Swan; there was no partnership interest as to the farming of said land. There was no partnership interest in the personal property that was bought with my consent or knowledge; I was never consulted about buying personal property for improving said farm.

[5] "I never received any money from them after they came to Texas. I did receive some money from them before they came to Texas; I received about $500; I can't tell you whether I received that money by check or money; I could not tell you in what sums I received that money, it was in small amounts."

All of this testimony was objected to by the defendants on the ground that it was testimony as to transactions with the deceased, and, plaintiff not having been called to testify thereto by the defendants, such testimony was inadmissible under article 2302, Sayles' Civil Statutes. It seems to be well settled by the decisions of our appellate courts that plaintiff in this suit could not testify over defendants' objection that the deceased, Milton J. Swan, had not paid her the moneys received by him as her agent. The statute prohibits testimony "as to" any transaction with the deceased, and this includes a denial that the deceased did or said certain things as well as an affirmative statement that such transactions or conversations occurred. Edelstein v. Brown, 100 Tex. 403, 100 S. W. 129, 123 Am. St. Rep. 816.

In the case of Johnson v. Lockhart, 16 Tex. Civ. App. 32, 40 S. W. 640, it is held that in a suit by an administrator to cancel a note executed by his decedent and held by the defendant the statute above cited prohibited the defendant from testifying that the note had not been paid. This is also held in the case of Abbott v. Stiff, 81 S. W. 562, in which case a writ of error was refused by the Supreme Court.

We think it necessarily follows from these decisions that the plaintiff in this case cannot, over the objection of defendants, testify that Milton J. Swan did not pay her the money collected by him as her agent.

[6, 7] In an able motion for rehearing, counsel for appellee has shown that there is other evidence in the record from which the court's finding as to the amount collected by Milton J. Swan for plaintiff can be sustained. This being so, the case having been tried before the court without a jury, the error in admitting the testimony set out in our main opinion would not require a reversal of the judgment. Young v. Robinson, 135 S. W. 717; Mullaly v. Noyes, 26 S. W. 146. The finding that the moneys collected

by the deceased had not been paid to the plaintiff does not appear to have been established by any testimony other than that of the plaintiff, and the admission of this testimony cannot be considered harmless.

There is no presumption that an agent duly authorized to collect money for his principal did not turn it over to the principal. On the contrary, the rule stated in 31 Cyc. page 1640, that: "The presumption of law is that an agent has done his duty until the contrary appears; misconduct and negligence will not in the absence of proof be presumed. Thus the legal presumption in the absence of proof is that the agent has performed his duty and paid over and accounted to his principal for moneys received by him in his capacity of agent"—is supported by the weight of authority. In addition to the cases cited in Cyc. in support of this rule, it is sustained by the following cases: Turner v. Kouwenhoven, 100 N. Y. 115, 2 N. E. 637; Knapp v. Griffin, 140 Pa. 604, 21 Atl. 449. It seems to us that this rule is sound in principle and is especially applicable when the agent is dead, and the principal seeks to hold his estate liable for his alleged nonperformance of duty. The money was rightfully received by the agent, and plaintiff's cause of action is based upon the alleged failure of the agent to do his duty and turn it over to her. In such case the burden is upon plaintiff, in order to establish liability on the part of the agent, to show that the money had not been paid over. The mouth of the agent being closed by death, the statute, in order that the parties may be placed on an equal footing in the matter of showing what the transactions were, closes the mouth of the principal.

We adhere to our former opinion reversing the judgment of the court below and remanding the cause for a new trial, and the motion for rehearing is overruled.